**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MUHAMMED KHAN TUMANI *et al.*, | : | |
| | : | |
| Petitioners, | : | Civil Action No.:  05-0526 (RMU) |
| | : | |
| v. | : | Document No.:   145 |
| | : | |
| BARACK H. OBAMA *et al.*, | : | |
| | : | |
| Respondents. | : | |

**MEMORANDUM OPINION**

**GRANTING IN PART AND DENYING IN PART THE PETITIONER'S
MOTION FOR EMERGENCY RELIEF**

**I.  INTRODUCTION**

The petitioner, Mohammed Khan Tumani (ISN 312), requests that the court order the respondents to (1) transfer him from Camp VI to Camp IV;[1] (2) provide him with access to his "father";[2] (3) allow an independent psychiatric and medical evaluation; (4) produce medical records; and (5) cease further interrogations until the records and evaluation are analyzed. Because the petitioner's first, second and fifth requests pertain to conditions of confinement, the court denies these requests for lack of jurisdiction. As to the third request, the court denies without prejudice the petitioner's request for an independent medical evaluation because there is no indication that one is necessary at this time. The court, however, grants the petitioner's fourth

---

[1] Camp IV is a "medium-security, communal living facility," while Camp VI "is comparable to and modeled after maximum-security, single-cell detention facilities in the United States." Resps.' Opp'n at 3.

[2] Although the petitioner alleges that fellow detainee Abd Al Nisr Khan Tumani (ISN 307) is his father, the respondents indicate that "two DNA tests have determined that [they] are not biologically father and son. Resps.' Opp'n at 2 n.1. For simplicity, in this Memorandum Order the court refers to Abd Al Nisr Khan Tumani as the petitioner's father.

request seeking medical records so that counsel may determine whether the petitioner is capable of assisting in this case or whether other action is necessary.

## II. FACTUAL & PROCEDURAL BACKGROUND

Pakistan handed the petitioner over to the United States in 2002 when the petitioner was 17 years old. Pet'r's Mot. at 2. He has been subjected to repeated interrogations during which, according to the petitioner, he has been pressured to provide information about his father, another Guantanamo detainee. *Id.* at 3. Since the petitioner's counsel began contacting him, it has reportedly been "extraordinarily difficult" to have a conversation because the petitioner has been "completely withdrawn." *Id.* at 4. According to petitioner's counsel, the difficulties have multiplied over the last year as reflected by the petitioner placing several letters in the legal mail system smeared with human feces, hitting his head against the walls of his cell for hours and attempting to take his own life. *Id.* at 4-5. The petitioner's "highly anxious and frenetic behavior" has purportedly precluded counsel from having productive conversations with him regarding his case. *Id.* at 5, 7. Counsel believe that the petitioner's mental condition is "declining rapidly." *Id.*, Ex. 2.

The respondents offer a markedly different view of the petitioner's condition. They state that medical professionals who regularly observe the petitioner have "uncovered no evidence whatsoever of any [psychological] disease or disorder." Resps.' Opp'n at 6. In addition, the petitioner has allegedly "consistently denied any suicidal thoughts or mental disorders" and has "show[n] organized behavior and readily carrie[d] on conversations." *Id.* The respondents describe the alleged attempted suicide as a superficial scratch on his forearm requiring only antibiotic ointment. *Id.* And the petitioner allegedly told an Arabic interpreter that he did not

want to commit suicide but wanted to draw attention to his request for access to his father. *Id.* at 7. Similarly, by banging his head against his cell wall, the petitioner was purportedly protesting his separation from his father and bringing attention to his request to move to Camp IV. *Id.* According to a psychologist at Guantanamo, the petitioner admitted that he did not want to kill himself by hitting his head and that he "had not hit his head very hard." *Id.*, Ex. 2 ¶ 32.

On February 9, 2009, the petitioner filed an emergency motion for an independent psychiatric and medical evaluation, production of medical records and additional urgent relief. The court ordered an expedited briefing schedule that same day. Briefing was completed on February 17, 2009.

### III.  ANALYSIS

**A. The Court Denies the Petitioner's Requests for Altering Conditions of Confinement**

Part of the petitioner's multi-faceted request is that the court adjust the conditions of his confinement by transferring him to a less secure facility, providing access to his father and prohibiting further interrogations. Congress, by enacting 28 U.S.C. § 2241(e)(2), prohibits courts from "hear[ing] or consider[ing] any [] action against the United States . . . relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement" of a Guantanamo detainee. This court has already determined that the Supreme Court, in *Boumediene v. Bush*, 128 S. Ct. 2229 (2008), did not invalidate this provision and affirmed that courts do not have jurisdiction to alter the conditions of a detainee's confinement in Guantanamo. *In re Guantanamo Bay Detainee Litigation*, 570 F. Supp. 2d 13, 19 (D.D.C. 2008). Since that ruling, other judges in this district have agreed that *Boumediene* did not invalidate 28 U.S.C. § 2241(e)(2). *In re Guantanamo Bay Detainee Litigation*, 577 F. Supp. 2d 312, 314 (D.D.C. 2008)

(Hogan, J.); *Khadr v. Bush*, 587 F. Supp. 2d 225, 234-37 (D.D.C. 2008) (Bates, J.); *Adahi v. Obama*, No. 05-280, at 11-16 (D.D.C. Feb. 10, 2009) (Kessler, J.).  Accordingly, the court denies the petitioner's requests regarding transfer, access and interrogations.

**B. The Court Grants the Petitioner's Request for Medical Records and Denies Without Prejudice the Petitioner's Request for an Independent Medical Evaluation**

The Supreme Court has stated that the court must ensure that the petitioner has meaningful access to counsel, which includes the ability to adequately communicate with him. *Bounds v. Smith*, 430 U.S. 817, 821-22 (1977) (stating that a habeas petitioner's access to the court must be "adequate, effective, and meaningful"); *Zuhair v. Bush*, No. 08-0864, at 2 (D.D.C. Dec. 22, 2008); *Al-Joudi v. Bush*, 406 F. Supp. 2d 13, 21-22 (D.D.C. 2005) (explaining that "in order to represent Petitioners, their counsel must have access to them, must be able to communicate with them, and must be made aware if their clients are in such fragile physical condition that their future ability to communicate is imminent danger").  The respondents remark that the petitioner's counsel have not demonstrated "significant interference with Petitioner's ability to assist," and therefore, the petitioner's requests are attempts to "second-guess . . . the treatment provided by the government." Resps.' Opp'n at 10-11.  This characterization, however, contradicts the petitioner's stated intent, to wit, that the requests are designed to prevent "irreparable legal, mental and physical harm" so that he can "communicate effectively with his attorneys about his case."  Pet'r's Mot. at 8-9.  Counsel support these assertions with accompanying declarations detailing their interactions with the petitioner.  *Id.*, Ex. 3 ¶¶ 7, 16-20; Reply, Ex. 1 ¶¶ 3, 10-11, Ex. 2 ¶ 6.  Because the petitioner's counsel explain why they believe the petitioner is incapable of assisting in the habeas process, the court disagrees with the respondents' assertion to the extent it construes the petitioner's requests for medical records and an independent medical evaluation as an attempt to second-guess the medical treatment.  Thus,

4

the petitioner's requests for an independent medical evaluation and production of medical records fall into a category of relief over which the court has jurisdiction.

Counsel for the petitioner argue that he is "currently unable to participate in his *habeas* action in any meaningful way" due to mental illness caused by isolation coupled with repeated interrogations. Pet'r's Mot. at 8. The respondents, on the other hand, assert that the petitioner has been subjected to numerous medical examinations, and there is "no evidence of mental illness." Resps.' Opp'n at 2. Furthermore, the respondents dispute the petitioner's characterization of his detention as "isolation" because he can communicate with detainees in adjacent cells, has uninterrupted group prayer from his cell five times a day and receives a minimum of four hours of recreation per day in communal areas. *Id.* at 3-4. As for the interrogations, the respondents report that one interrogator has conducted seven interviews with the petitioner over the past twelve months, one of which the petitioner himself requested. *Id.* at 3. And at any time, the petitioner may refuse to meet with the interrogator or end an interrogation, according to the respondents. *Id.* Moreover, the respondents indicate that the petitioner is in the comparatively more restrictive environment of Camp VI because he "openly violates camp rules," including having committed 150 disciplinary infractions for, *inter alia*, punching and spitting on guards, smearing his cell walls with feces and participating in a mass disturbance. *Id.* at 4. The respondents allege that the petitioner has stated that "he will continue to engage in such behavior until the guards grow tired of it and give him what he wants." *Id.* Stated differently, the respondents believe that the petitioner "seeks to achieve by Court order what he could not by harming himself and otherwise misbehaving." *Id.* at 7.

As observed by another member of this court, "[r]equesting copies of [] medical records . . . and being able to secure independent expert assessments of the data in the records is a

5

legitimate and important effort to provide effective representation and present the court with appropriate information affecting the lawfulness of [] detention." *Husayn v. Gates*, No. 08-1360, at 7 (D.D.C. Nov. 28, 2008). Because counsel's efforts to communicate with the petitioner have become increasingly ineffective due to purported psychological stress, the court, in furtherance of its responsibility to ensure "adequate, effective, and meaningful" access to the court, orders that the respondents produce the petitioner's medical records dating back to January 2007. *Al-Joudi v. Bush*, 406 F. Supp. 2d 13, 22 (D.D.C. 2005) (reasoning that "[u]nless petitioners' counsel can have access to their clients, and know their true medical conditions, including whether they are in imminent danger of death, so as to counsel them in order to persuade them to stay alive, it is obvious that their ability to present their claims to the Court will be irreparably compromised"). This production will aid counsel in determining whether the petitioner is capable of assisting in the preparation of his habeas case or whether, as the respondents note, the case will need to continue through a "next friend." *See Whitmore v. Arkansas*, 495 U.S. 149 (1990). Without these records and in light of the representations made by the respondents as to the medical care being provided, the court concludes that an independent medical examination is not necessary at this time.

## IV. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the petitioner's motion. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 23rd day of February, 2009.

RICARDO M. URBINA  
United States District Judge